## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEEM SHABAZZ,<br><br>    Defendant. | Crim. No. 15-20-LPS |

David C. Weiss, Acting U.S. Attorney, and Whitney C. Cloud, Assistant U.S. Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, DE

> Attorneys for Plaintiff

Edson A. Bostic, Federal Public Defender, Eleni Kousoulis, Assistant Federal Public Defender, and Tieffa N. Harper, Senior Litigator, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wilmington, DE

> Attorneys for Defendant

---

## **MEMORANDUM OPINION**

October 18, 2017
Wilmington, Delaware

**STARK, U.S. District Judge.**

On February 4, 2016, a federal jury convicted defendant Aleem Shabazz ("Shabazz") of four felony counts, relating to straw purchases and unlawful possession of firearms. (*See* D.I. 53) The parties disputed whether Shabazz's previous convictions under Delaware's second-degree burglary statute subject him to a 15-year mandatory minimum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA" or the "Act"). The parties submitted several rounds of briefs on the issue (*see* D.I. 72, 74, 78, 82, 83, 86), and the Court heard oral argument on April 6, 2017 (*see* D.I. 81 ("Tr.")) and August 29, 2017 (*see* D.I. 87 ("Aug. Tr.")).

At the conclusion of the August hearing, the Court ruled from the bench that ACCA does not apply. The Court indicated that it would issue a written opinion further articulating its reasoning. (*See* Aug. Tr. at 31-34) This is that opinion.[1]

## I. BACKGROUND

In 2010, a Delaware state grand jury indicted Shabazz on a number of felony charges stemming from his involvement in a series of residential burglaries in Wilmington, Delaware. (*See* D.I. 72-4) On September 20, 2010, Shabazz pled guilty to, among others, Counts I, VIII, and XV, which comprised three charges of second-degree burglary. (*See* D.I. 72-6) Shabazz spent a little under three years incarcerated before being released on probation. (*See* D.I. 73 at 10, 24) As a convicted felon, Shabazz could no longer lawfully possess firearms or ammunition. *See* 18 U.S.C. § 922(g).

On April 28, 2015, a federal grand jury returned an indictment charging Shabazz with six

---

[1]The continued sentencing hearing was held on October 4. After determining that the advisory Sentencing Guidelines range was 41-51 months, the Court sentenced Shabazz to a term of incarceration of 47 months.

felony counts. *(See* D.I. 2) In February 2016, after a four-day trial, a jury found Shabazz guilty of illegally possessing a gun and ammunition, and aiding and abetting straw purchases of firearms, in violation of 18 U.S.C. §§ 922(a)(6) and (g)(1) . *(See* D.I. 53) In preparation for sentencing, the probation office provided the Court and the parties with a Presentence Investigation Report ("PSR"). *(See, e.g.,* D.I. 73) Based on Shabazz's 2010 second-degree burglary convictions, the PSR classified Shabazz as an armed career criminal subject to 18 U.S.C. § 924(e) and USSG § 4B 1.4(a), concluding that, therefore, the Court had to impose at least the ACCA mandatory minimum sentence of 180 months. *(See* D.I. 73 at 9, 24)

Shabazz objected under Federal Rule of Criminal Procedure 32(f) to the PSR's application of ACCA. *(See* D.I. 70) The parties submitted an initial round of briefs *(see* D.I. 72, 74, 78) and the Court heard oral argument *(see* Tr.). The Court then continued Shabazz's sentencing hearing, allowed the parties to submit supplemental briefing, and heard additional argument. *(See* D.I. 82, 83, 86; Aug. Tr.) After carefully considering counsel's arguments, the Court informed the parties at the end of the August 29, 2017 hearing that it would sustain Shabazz's objection, and consequently would not apply ACCA in this case.

## II.   APPLICABLE LAW

Section 924 of Title 18 of the United States Code reads, in relevant part:

> [A] person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . , committed on occasions different from one another, . . . shall be . . . imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1). The statute further provides that certain offenses "punishable by imprisonment for a term exceeding one year" – including "burglary" – qualify as "violent

2

felon[ies]" under the Act.  18 U.S.C. § 924(e)(2)(B)(ii).[2]

The Supreme Court has instructed that a prior offense cannot qualify as a "violent felony" under the Act unless its elements are "the same as, or narrower than" the elements of the "generic" versions of the enumerated offenses. *Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016). To make that determination, courts apply the so-called "categorical approach," which focuses solely on comparing the elements of the particular crime of conviction with those of its generic counterpart. *Id.* at 2248. Crimes that punish a broader range of conduct than the "generic" offense are disqualified from being considered violent offenses. *Id.* The actual facts underlying a given conviction are irrelevant. *See id.* at 2251 ("How a given defendant actually perpetrated the crime – what we have referred to as the underlying brute facts or means of commission – makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence.") (internal quotation marks and citation omitted).

Sometimes, a single criminal statute will effectively define multiple offenses that address varying conduct by setting out alternative elements.[3]  For these "divisible" crimes, courts are

---

[2]Arson, extortion, and crimes "involv[ing] use of explosives" (hereinafter, along with burglary, referred to as the "enumerated offenses") also qualify. *See id.* Congress also included a so-called "residual clause" for crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another," but this provision has been struck down by the Supreme Court as unconstitutionally vague. *See Johnson v. United States*, 135 S. Ct. 2551 (2015).

[3]For example, Pennsylvania's felony robbery statute provides, in relevant part:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another; . . .

3

permitted to examine a "limited class of documents" to determine "what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. Under this "modified categorical approach," courts then compare that specific set of elements with the corresponding "generic" offense. *Id.*

If the government can show three convictions for violent felonies "committed on occasions different from one another," ACCA imposes a mandatory minimum sentence of 15 years of incarceration. 18 U.S.C. § 924(e)(1). The U.S. Sentencing Guidelines also provide a minimum baseline offense level of 33 for defendants subject to ACCA. *See* U.S. Sentencing Guidelines Manual § 4B1.4(b)(3) (U.S. Sentencing Comm'n 2016).

## III. DISCUSSION

Based on Shabazz's three Delaware convictions for burglary in the second degree, the government argues the Court must apply ACCA and sentence Shabazz to the mandatory minimum 15-year term. Shabazz makes three principal arguments in response. He first questions whether the record allows the Court to determine which subsection of the second-degree burglary statute he was convicted of violating. He further contends that the government has failed to prove that the relevant convictions were for offenses committed on three separate

---

> (v) physically takes or removes property from the person of another by force however slight; or
>
> (vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

18 Pa. Cons. Stat. § 3701(a). Because it features "clearly laid out alternative elements," this statute is divisible. *United States v. Blair*, 734 F.3d 218, 225 (3d Cir. 2013).

4

occasions. Finally, he argues that his burglary convictions are not ACCA "violent felonies"

because they do not fit within the definition of "generic" burglary. After addressing the

preliminary issue of whether Delaware's second-degree burglary statute is divisible, the Court

will address each of Shabazz's arguments.[4]

## A. Is the Relevant Statute Divisible?

Shabazz was charged with – and ultimately pled guilty to – violating Title 11, Section

825 of the Delaware Code ("§ 825"). (*Compare* D.I. 72-4 at Counts I, VIII, and XV *with* D.I. 72-

72-6) That statute provides, in relevant part:

> A person is guilty of burglary in the second degree when the person
> knowingly enters or remains unlawfully:
>
> > (1) In a dwelling with intent to commit a crime therein; or
>
> > (2) In a building and when, in effecting entry or while in the
> > building or in immediate flight therefrom, the person or
> > another participant in the crime:
> >
> > > a. Is armed with explosives or a deadly weapon; or
> >
> > > b. Causes physical injury to any person who is not a
> > > participant in the crime.

11 Del. C. § 825(a). The government contends that § 825(a) is divisible, while also conceding

that § 825(a)(2) cannot form an ACCA predicate offense. (D.I. 72 at 5) The government

contends that Shabazz violated *§ 825(a)(1)* on three separate occasions and is, therefore, subject

---

[4]Shabazz also objects to the PSR's inclusion of certain facts regarding his burglary
convictions that were "obtained from a police report and affidavit of probable cause." (D.I. 70 at
1) This objection is overruled. As the government correctly notes (*see* D.I. 73 at 20-21), the
inclusion of these facts in the PSR is a separate issue from whether these facts may be considered
in deciding whether to apply ACCA. Here, the Court has not relied on the PSR in determining
ACCA's application to Shabazz's convictions, as will be seen.

to ACCA's mandatory minimum.[5]

Shabazz agrees that § 825(a)(2) cannot support an ACCA enhancement. He further suggests that the question of divisibility is essentially moot, based on his assertion that § 825(a)(1) does not qualify as ACCA predicate either. (*See* D.I. 74 at 8 (modified categorical approach appropriate "only when a statute defines burglary not . . . overbroadly, but instead alternatively, with one statutory phrase corresponding to the generic crime and another not") (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2286, (2013)); *see also id.* at 14) In other words, Shabazz would have the Court find that neither subsection qualifies as an ACCA predicate and stop there.

The Court concludes that subsections (1) and (2) define two separate criminal offenses with different elements; they do not "enumerate[] various factual means of committing a single element" of a single offense. *Mathis*, 136 S. Ct. at 2249. Section 825(a) is, therefore, potentially divisible.

## B. Does the Record Establish Convictions for a Specific Subsection of § 825?

Shabazz first contends that the "the record does not conclusively demonstrate that he pleaded guilty to a specific subsection of [§ 825]." (D.I. 74 at 5) Given that a conviction under *§ 825(a)(2)* would not qualify as generic burglary, a failure by the government to prove that Shabazz specifically pled guilty to violating § 825(a)(1) would preclude ACCA's application to Shabazz's second-degree burglary convictions.

The "limited class of documents" that courts may consult in determining which elements of a divisible statute underpin a defendant's prior convictions include the indictment, plea

---

[5]The government does not suggest that § 825(a)(1) is further divisible in its own right.

6

agreement, plea colloquy, or "comparable judicial record." *Shepard v. United States*, 544 U.S.
13, 26 (2005). Here, while the *Shepard* record lacks any explicit reference to either "§ 825(a)(1)"
or "§ 825(a)(2)," the Delaware indictment makes clear that all three of Shabazz's second-degree
burglary charges were for violations of § 825(a)(1).

Count I of the Delaware indictment alleged that Shabazz "did knowingly enter or remain
unlawfully in a dwelling . . . with the intent to commit the crime of Theft therein," in violation of
§ 825. (D.I. 72-4 at 2 of 25) Counts VIII (*see id.* at 6 of 25) and XV (*see id.* at 10 of 25) contain
the same language. The elements listed in the indictment are identical to § 825(a)(1)'s elements,
the language closely tracks that of § 825(a)(1), and these charges lack § 825(a)(2)'s physical
injury or deadly weapon elements.

Thus, the Court concludes that the record establishes that Shabazz was charged with and
plead guilty to violations of § 825(a)(1). *See generally United States v. Goldsborough*, No.
16-cr-25-SLR, D.I. 25 ¶ 3 (D. Del. Dec. 13, 2016) ("The fact that the subsection of the assault
second degree statute was not [explicitly] enumerated is of no moment."). Shabazz's objection
on this basis is overruled.

## C. Whether Shabazz Committed Qualifying Offenses "On Occasions Different From One Another"

Shabazz next argues that the government has failed to prove that his criminal history
contains three qualifying convictions "committed on occasions different from one another." 18
U.S.C. § 924(e)(1). While Shabazz has three convictions for second-degree burglary, two of
them involved burglaries occurring on the same day: January 4, 2010. (*See* D.I. 72-4 Counts I,
VIII) The third burglary was committed on January 25, 2010. (*See id.* Count XV) Shabazz

7

contends that the two January 4 burglaries should be counted as one offense, so the government has established, at most, *two* burglaries on different occasions.

Under the "separate episodes" test adopted by the Third Circuit in *United States v. Schoolcraft*, 879 F.2d 64, 73-74 (3d Cir. 1989), courts resolve such disputes by looking to the crimes' nature, geographic locations, timing, and the victims' identities. *See, e.g.*, *Blair*, 734 F.3d at 228; *United States v. Jones*, 526 F. App'x 186, 188 (3d Cir. 2013). With respect to timing, courts consider "'whether the defendant had sufficient time to cease and desist or withdraw from the criminal activity.'" *United States v. Mucha*, 49 F. App'x 368, 371 (3d Cir. 2002) (quoting *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000)).

The Third Circuit has not addressed the evidentiary boundaries or the burden of proof applicable to the "separate episodes" analysis. The government urges the Court to apply a burden-shifting standard adopted by the Fifth and Ninth Circuits, and points the Court to facts contained in documents outside of the *Shepard* record.[6] Shabazz counters that the government bears the burden of proof by a preponderance of the evidence at all times, and that the Court is limited to the same *Shepard* record it used above in applying the modified categorical approach. For his position, Shabazz points to the Seventh Circuit's analysis in *Kirkland v. United States*, 687 F.3d 878, 887-95 (7th Cir. 2012). The Court need not resolve these aspects of the parties' dispute because it finds that the government has met its burden even if the Court follows Shabazz's more stringent approach.

From the *Shepard* record in this case, which includes Shabazz's state court indictment,

---

[6]For example, the government asks the Court to look to the PSR as well as a similar 2010 investigative report prepared in advance of sentencing for Shabazz's burglary convictions. (*See* D.I. 82 at 14 n.7)

plea agreement, plea colloquy, and sentencing transcript,[7] the Court makes the following findings

of fact:

- Shabazz and two co-defendants were charged with burgling two different residences on January 4, 2010. (*See* D.I. 72-4 at Counts I, VIII) Shabazz pled guilty to both of these charges. (*See* D.I. 72-6 at 4-6; *see also* D.I. 72-5)

- None of the *Shepard* sources contain any reference to when or at what times on January 4, 2010 the two burglaries occurred.

- Nor do the *Shepard* documents inform the Court as to whether Shabazz was charged and convicted as a principal or instead as an accomplice.

- The two Wilmington, Delaware residences that were burgled on January 4, 2010, are roughly 1.7 miles apart.[8]

- The two January 4, 2010 burglaries harmed two separate sets of victims. (*See generally* D.I. 72-7)

- Each burglary appears to have required the simultaneous

---

[7]The government, citing non-precedential dispositions from the Third Circuit, contends that the 2011 sentencing transcript (*see* D.I. 72-8) is an appropriate *Shepard* document (*see* D.I. 82 at 13 n.6). In objecting to "blanket[]" use of the transcript as a *Shepard* record, Shabazz appears to draw a distinction between use of his own representations contained in the transcript and reliance on comments made by the State. (*See* Aug. Tr. at 23-24) Particularly given defense counsel's concession that "[i]f the defendant made any statement during the sentencing proceeding . . . that could be something that the Court could consider" (*id.*), the Court concludes that Shabazz's counsel's representations at the sentencing hearing are properly considered here under *Shepard*. *See United States v. McCall*, 448 F. App'x 221, 223 (3d Cir. 2011) ("Although *Shepard* does not explicitly state that transcripts of sentencing hearings are admissible, we conclude that the transcript reviewed by the District Court in this case is a 'comparable judicial record' of unquestioned reliability.") (quoting *Shepard*, 544 U.S. at 26); *see also United States v. Ker Yang*, 799 F.3d 750, 753 (7th Cir. 2015).

[8]The *Shepard* documents provide the residences' addresses (*see, e.g.*, D.I. 72-4), and the Court takes judicial notice of the distance between them through use of Google Maps. *See* Fed. R. Evid. 201(b); *see also Dynka v. Norfolk S. Ry. Corp.*, 2010 WL 2490683, at *1 n.2 (E.D. Pa. June 15, 2010).

involvement of at least two individuals: a lookout and a
person who entered the building. (*See* D.I. 72-8 at 3)[9]

Shabazz does not contest that the burglaries took place at different locations with
different victims. His position is predicated on the timing factor. Although nominally one of
several factors in the "separate episodes" analysis, the timing of the offenses can be dispositive.
*See generally Schoolcraft*, 879 F.2d at 73 (stating that separate episodes approach "simply
require[s] that the criminal episodes be distinct in time") (internal quotation marks omitted); *see
also Blair*, 734 F.3d at 229 n.9 ("[T]he critical inquiry when deciding whether separate offenses
occurred on 'occasions different from one another' for purposes of the ACCA is whether the
offenses occurred sequentially.") (quoting *United States v. Fuller*, 453 F.3d 274, 278 (5th Cir.
2006)).

Shabazz seizes on the record's silence with respect to the theories of liability and timing
of the two burglaries; he contends that the record "leave[s] open the possibility that Mr. Shabazz
was an accomplice in two simultaneous burglaries committed on January 4, 2010." (D.I. 74 at
4)[10] But the record's explicit silence does not negate the substantial circumstantial evidence

---

[9]At Shabazz's sentencing hearing, his lawyer stated the following:

> There are a number of burglaries that occurred at several
> residences, and the *modus operandi* seemed to be the same,
> someone would check the front door to see if someone was at
> home. If no one was at home, a person would enter through a rear
> window or rear door.

(*Id.*) A rental car with a GPS tracker was also involved. (*See id.*)

[10]Shabazz offers several hypothetical factual scenarios to explain how these offenses
could have been committed simultaneously. (*See* D.I. 74 at 3-4 ("[T]he government's exhibits do
not establish: (a) whether Mr. Shabazz burglarized two dwellings at two separate times, (b)
whether Mr. Shabazz burglarized one dwelling while his accomplices were simultaneously

supporting the government's position. The distance between the two homes, the involvement of

three individuals, and the crimes' *modus operandi* – specifically, that each burglary required a

lookout and an entrant – make it difficult to conceive how three individuals could have carried

out two simultaneous burglaries. The government has shown by a preponderance of the evidence

that the two January 4, 2010 burglaries occurred on separate occasions from one another, as

ACCA requires. *See generally Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension*

*Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (explaining that preponderance of evidence standard

"simply requires the trier of fact to believe that the existence of a fact is more probable than its

nonexistence before he may find in favor of the party who has the burden to persuade the judge

of the fact's existence") (internal quotation marks omitted).[11]

Shabazz's objection based on the government's failure to prove convictions on three

separate occasions is overruled.

### D.     Whether Section 825(a)(1) is an ACCA Predicate Offense

Shabazz's principal contention is that his § 825(a)(1) convictions cannot serve as ACCA

predicates because § 825(a)(1) does not fit within the definition of generic burglary in all

respects. Specifically, Shabazz contends that the range of places protected under § 825(a)(1) –

its "locational element," *Mathis*, 136 S. Ct. at 2250 – is broader than is true of generic burglary.

The Court agrees.

---

burglarizing another dwelling, or (c) whether his accomplices committed two simultaneous
burglaries after Mr. Shabazz dropped them off at the two dwellings."))

    [11]*Kirkland* provides a useful contrast to the record here – in that case, the Seventh Circuit
reached the opposite conclusion. There, the record was silent as to *both* the timing *and the*
*location* of two offenses committed on the same day. *See Kirkland*, 687 F.3d at 888.

11

As noted above, the Delaware statute makes it a felony to enter or remain in a "dwelling" with intent to commit a crime therein. 11 Del. C. § 825(a)(1). The Delaware Criminal Code defines a "dwelling" as follows:

> "Dwelling" means a ***building*** which is usually occupied by a person lodging therein at night.

11 Del. C. § 829(b) (emphasis added). An earlier chapter of the Code defines the term "building":

> When used in this Criminal Code:
>
> > (1) "Building," in addition to its ordinary meaning, includes any structure, vehicle or watercraft. Where a building consists of 2 or more units separately secured or occupied, each unit shall be deemed a separate building.

11 Del. C. § 222. Put another way, § 825(a)(1) punishes burglary of any building, structure, vehicle, or watercraft that is usually used as lodging at night.[12]

Under the modified categorical approach, for § 825(a)(1) to serve as an ACCA predicate offense, it must criminalize only a range of conduct that is equal to or narrower than the "generic" offense of burglary.[13] *See Mathis*, 136 S. Ct. at 2248; *see also Taylor v. United States*, 495 U.S. 575, 598 (1990). In *Taylor*, 495 U.S. at 598, the Supreme Court set out the "generic, contemporary meaning of burglary" that provides the basis for this comparison. "Generic" burglary, the Court explained, "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, ***a building or other structure***, with intent to commit a

---

[12]The government concedes that a vehicle "regularly used for overnight lodging" would qualify as a dwelling under § 825(a)(1). (D.I. 82 at 4 n.3)

[13]The question is not one of overall breadth, but rather whether § 825(a)(1) criminalizes ***any*** conduct that falls outside the boundaries of generic burglary.

crime." *Id.* (emphasis added) (citing W. LaFave & A. Scott, Substantive Criminal Law § 8.13(a), p. 466 (1986)). This definition recognizes that "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States." *Id.* It is also "practically identical" to a definition that appeared in an earlier version of ACCA before being omitted from the current version of the statute. *Id.* at 581 ("Under the Armed Career Criminal Act of 1984 . . . [b]urglary was defined . . . as any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense.") (internal quotation marks omitted). The Court noted that "a few States' burglary statutes . . . define burglary more broadly, *e.g.,* . . . by including places, such as automobiles and vending machines, other than buildings." *Id.* at 599.

Shabazz contends that § 825(a)(1) does not define an ACCA "violent felony." Because § 825(a)(1)'s locational element criminalizes unlawful entries into vehicles and watercraft, Shabazz argues, the statute "reaches a 'broader range of places' and covers a 'greater swath of conduct' than the elements of generic burglary" (D.I. 74 at 15 (quoting *Mathis*, 136 S. Ct. at 2250-51)), which protects only buildings and structures.

In response, the government contends that § 825(a)(1)'s "dwelling" limitation makes it *narrower* than generic burglary, as generic burglary extends to places – such as businesses – that are not generally used for lodging at night. (*See, e.g.,* D.I. 72 at 5 n.6) In the government's view, this limitation differentiates § 825(a)(1) from other laws, such as the Iowa statute involved in *Mathis*, that have been found nongeneric based on broader locational elements. Burglary of a dwelling, the government claims, is exactly the sort of conduct that Congress intended to qualify as a predicate "violent felony" under ACCA, and no binding case law requires this Court to

13

conclude otherwise – even if the dwelling takes the form of a land or water vehicle instead of a building.

The government draws heavily on the Delaware statute's origins and underlying aims. (*See, e.g.*, D.I. 82 at 9 ("Because Delaware's dwelling statutes retain their common-law ancestry, it would be contrary to Congressional and state legislative intent to collapse higher-level-burglary offenses concerning dwellings with lower-level-burglary offenses concerning buildings.")) At common law, burglary was limited to breaking and entering a "dwelling house" at night with intent to commit a felony therein. (*See id.* at 2-3 (citing 2 Del. Cas. 235, 236 ¶ 9); *see also Taylor*, 495 U.S. at 580 n.3) Delaware, the government notes, has preserved its "common-law understanding of a dwelling as distinct from a building" and "the common-law recognition that unlawful entry of a *dwelling* is a distinct harm from unlawful entry of a building." (*Id.* at 4 (citing Model Penal Code § 221.1 (1980)))[14] In the government's view, § 825(a)(1) is better thought of as an aggravated subcategory of generic burglary. (*See* D.I. 82 at 7 (characterizing "burglary of a dwelling" as "a higher-offense-level burglary . . . whose common-law roots place it squarely within the elements of generic burglary")) For these reasons, the government argues, "common sense principles of statutory interpretation" dictate that § 825(a)(1) is a "violent felony" under ACCA. (D.I. 82 at 9)

Several decisions have considered ACCA's application to similar statutes. In *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007), the Ninth Circuit addressed an Oregon second-

---

[14]The Model Penal Code also treats burglary "perpetrated in the dwelling of another at night" as an aggravated form of the offense. Model Penal Code § 221.1(2) (1980). Ultimately, regardless of Delaware's legislative intent, the unambiguous language contained in the statutory definitions outlined above serves as the basis for the Court's analysis.

14

degree burglary statute. Oregon law defines a "building" to include "any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein." *Id.* at 850 (quoting Or. Rev. Stat. § 164.205(1)). The court ruled that the defendant's conviction could not serve as an ACCA predicate offense. The Oregon statute, the court said, "expressly includes in its definition that which the Supreme Court expressly excluded from the generic, federal definition" because it "extend[s] . . . to non-buildings." *Id.* at 850.

The Fourth Circuit has twice ruled similarly in recent years. In *United States v. White*, 836 F.3d 437 (4th Cir. 2016), it considered a West Virginia statute that included within its locational element "self-propelled motor home[s]" or "nonmotive vehicle[s] primarily designed for human habitation and occupancy and used as a dwelling regularly or only from time to time." *Id.* at 445 (quoting W. Va. Code § 61–3–11(c)). Because this definition "reaches enclosures excluded from generic burglary's building or structure element," and thereby "encompasses conduct that is excluded from the definition of generic burglary," the statute could not serve as an ACCA predicate offense. *Id.* at 445-46. *White* relied on and reaffirmed the same court's ruling from two years earlier in *United States v. Henriquez*, 757 F.3d 144 (4th Cir. 2014). In that case, the court refused to extend ACCA "violent felony" status to a Maryland statute that punishes burglary of a "dwelling." *Id.* at 148 (quoting Md. Code, Crim. Law § 6–202(a)). The court observed that while the term was undefined, Maryland state courts had interpreted it to mean "a place where a person resides and sleeps," and one Maryland court "ha[d] already deemed a recreational vehicle a dwelling." *Id.* at 149-50. In both *White* and *Henriquez*, it was "immaterial" that the statutes in question "would only capture an enclosure where a person resides or sleeps;" the dispositive factor was that the statutes "reach[] enclosures excluded from

15

generic burglary's building or structure element." *White,* 836 F.3d at 446.

In *United States v. Lockett,* 810 F.3d 1262 (11th Cir. 2016), the Eleventh Circuit reached the same result regarding a South Carolina burglary-of-a-dwelling statute. The statute made it a crime to enter into "a dwelling without consent and with intent to commit a crime therein." *Id.* at 1269 (quoting S.C. Code § 16–11–312(A)). A "dwelling" is defined as, among other things, "the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person." *Id.* (quoting S.C. Code § 16–11–310(2)). A "building" is in turn defined to include, among other things, "any structure, vehicle, watercraft, or aircraft." *Id.* at 1270 (quoting S.C. Code § 16–11–310(1)). The court's ruling was based on its observation that generic burglary's locational element "does not cover things like boats and vehicles." *Id.* at 1270; *see also United States v. Howard,* 742 F.3d 1334, 1348 (11th Cir. 2014) ("A number of those things included in [Alabama's] definition of 'building' (such as vehicles and watercraft) fall outside the 'building or structure' element of generic burglary, making the burglary statute non-generic.").

On the other hand, in *United States v. Spring,* 80 F.3d 1450 (10th Cir. 1996), the Tenth Circuit ruled that a Texas burglary statute that covered "vehicle[s] . . . adapted for the overnight accommodation of persons" – did qualify as an ACCA predicate offense. *Id.* at 1462 (quoting Tex. Penal Code § 28.01). The court rejected the defendant's argument that *Taylor* required otherwise, holding that "the Texas Code definition of habitation does not include vehicles *in the sense* in which *Taylor* intended [to exclude them]." *Id.* (emphasis added).[15] *But see generally*

---

[15]In reaching this conclusion, the Tenth Circuit adopted the Ninth Circuit's reasoning in *United States v. Sweeten,* 933 F.2d 765 (9th Cir. 1991), which considered contentions similar to those offered by the government here:

> The burglary of a mobile home or 'vehicle adapted for the

16

*United States v. Ramon Silva*, 608 F.3d 663, 668 (10th Cir. 2010) ("[T]he Supreme Court has indicated that the scope of generic burglary would encompass not only those spaces that are designed for occupancy and intended for use in one place, but also other, potentially less complete 'enclosed spaces,' so long as they *do not* resemble a boat, motor vehicle, or other mode of transportation.") (emphasis added).

Other courts have reached similar conclusions, albeit with little analysis regarding the locational element of the statutes at issue. *See, e.g.*, *United States v. Wallis*, 100 F.3d 960 (8th Cir. 1996) (following *Spring*'s holding regarding Texas habitation statute); *United States v. Constante*, 544 F.3d 584, 586 (5th Cir. 2008). In sum, "[i]t is fair to say that the law in this area is unsettled and unclear." *United States v. Smith*, 2017 WL 1321110, at \*4 (N.D. Ill. Apr. 3, 2017). But it also appears that the majority view is against the government's position.

---

> overnight accommodation of persons' is not analogous to the theft of an automobile or to the other property crimes whose relative lack of severity the *Taylor* Court (and presumably, Congress) meant to exclude from its generic definition. Rather, it is analogous to the burglary of a building or house. Indeed, the burglary of a mobile home or camper is often likely to pose a greater risk of violence to the occupant or owner than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed.

*Spring*, 80 F.3d at 1462 (quoting *Sweeten*, 933 F.2d at 771). In *Grisel* the Ninth Circuit explicitly overruled *Sweeten*. *See Grisel*, 488 F.3d at 851 n.5 (9th Cir. 2007) ("To the extent that our precedents suggest that state statutes satisfy the categorical inquiry when they define burglary to include non-buildings adapted for overnight accommodation, they are overruled. Those cases relied on the fact that such vehicles or boats effectively serve as dwellings and . . . failed to recognize that *Taylor* jettisoned analyzing the *use* of an object in favor of analyzing the *nature* of the object.") (internal citations omitted).

17

The government urges the Court to follow "the decisions of the Fifth, Sixth,[16] and Tenth Circuits," which it suggests are "better reasoned than those of the Fourth and Ninth Circuit." (D.I. 82 at 8 (quoting *United States v. Robinson*, 221 F. Supp. 3d 1088, 1093 (E.D. Ark. 2016)) The *Robinson* case that the government quotes for that proposition found an Arkansas residential burglary statute to be an ACCA violent felony. The statute covers "residential occupiable structure[s]," which include "a vehicle, building, or other structure: (i) In which any person lives; or (ii) That is customarily used for overnight accommodation of a person whether or not a person is actually present." *Robinson*, 221 F. Supp. 3d at 1090 (quoting Ark. Code § 5–39–101(4)(A)). The court pointed to the common-law emphasis on protecting dwellings, "Congress['s] inten[t] to prohibit crimes that created the possibility of violence between the criminal and occupant," and the Supreme Court's express adoption in *Taylor* of a definition of generic burglary that is "broader, not narrower, than common-law burglary." *Id.* at 1093-94. At the heart of *Robinson*'s ruling (and government's argument here) is the view that "'generic burglary' should not be defined so narrowly as to exclude some places that are used in modern society as dwellings." (D.I. 82 at 9 (quoting *Robinson*, 221 F. Supp. 3d at 1094))

In *United States v. Sims*, 854 F.3d 1037 (8th Cir. 2017), the Eighth Circuit addressed whether Ark. Code § 5-39-201(a)(1) – the very same statute at issue in *Robinson* – could qualify as an ACCA "crime of violence." The court held that "Arkansas residential burglary categorically sweeps more broadly than generic burglary," and that "it is inconsequential that

---

[16]The Sixth Circuit recently overruled its holding in *United States v. Nance*, 481 F.3d 882, 887 (6th Cir. 2007), that Tennessee's aggravated burglary statute qualified as an ACCA violent felony. *See United States v. Stitt*, 860 F.3d 854, 858 (6th Cir. 2017) (en banc) ("The issue before us . . . is whether a burglary statute that covers vehicles or movable enclosures only if they are habitable fits within the bounds of generic burglary. We hold that it does not.").

Arkansas's statute confines residential burglary to vehicles 'in which any person lives' or 'that are customarily used for overnight accommodation.'" *Id.* at 1040 (quoting Ark. Code § 5-39-101(4)(A)) (internal brackets omitted).[17] Based on its holding in *Sims*, the Eighth Circuit recently reversed the District Court's ruling in *Robinson. See United States v. Robinson*, 2017 WL 4280546 (8th Cir. September 27, 2017).

It is true, as the government states, that neither the Third Circuit nor the Supreme Court have addressed ACCA's application to a statute like § 825(a)(1). But the implications of the Supreme Court's decisions are, in the Court's view, clear. As the courts have held in *Grisel, Lockett, Henriquez,* and *Sims* decisions discussed above, a statute having a locational element that includes vehicles does not qualify as an ACCA predicate offense. The Supreme Court has repeatedly instructed lower courts that ACCA "makes burglary a violent felony *only if* committed in a building or enclosed space ('generic burglary'), *not in a boat or motor vehicle*." *Shepard*, 544 U.S. at 15-16 (emphasis added); *see also Taylor*, 495 U.S. at 599; *Mathis*, 136 S. Ct. at 2250. The Court's unqualified statements necessarily extend to those statutes – like § 825(a)(1) – whose locational elements only sweep in vehicles that are functionally the same as fixed dwellings.

Perhaps "the policy aims of Congress would be better served by a broader definition of [generic] burglary" that includes, for example, motor homes and houseboats. *Grisel*, 488 F.3d at

---

[17]The holding in *Sims* was based in part on the same court's earlier ruling in *United States v. Lamb*, 847 F.3d 928 (8th Cir. 2017). Although the government cites that case as one of several examples of "circuit courts . . . conclud[ing] that various dwelling statutes *do* satisfy generic burglary" (D.I. 82 at 8), that outcome resulted from the divisibility of the Wisconsin statute at issue. In fact, the *Lamb* court began its analysis by observing that the statute, "viewed as a whole, encompasses a broader range of conduct than generic burglary as defined in *Taylor*, such as burglary of . . . motor homes." 847 F.3d at 931.

19

849. But that is not the relevant inquiry. *See id.* ("Congress chose not to define burglary . . . . To fill in that gap, the Supreme Court in *Taylor* defined burglary using a generic definition that we are bound to obey."). Because there is "a realistic probability, not a theoretical possibility, that [Delaware] would apply its statute to conduct that falls outside" the Supreme Court's generic definition of burglary, *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007), § 825(a)(1) is broader than generic burglary and cannot function as an ACCA predicate offense. Shabazz's objection to the PSR on this basis is sustained.

## IV. CONCLUSION

For the reasons given, Shabazz's objection to his classification as an armed career criminal is sustained. ACCA's fifteen-year mandatory minimum term of incarceration, and the accompanying sentencing guideline enhancement, do not apply to Shabazz.